ELECTRONICALLY FILED
COURT OF COMMON PLEAS
Wednesday, March 20, 2013 2:20:59 PM
CASE NUMBER: 2013 CV 01786 Docket ID: 17997390
GREGORY A BRUSH
CLERK OF COURTS MONTGOMERY COUNTY OHIO

## IN THE MONTGOMERY COUNTY COURT OF COMMON PLEAS
## GENERAL DIVISION

| | | |
|---|---|---|
| **BRYAN A. MOBLEY** | : | **CASE NO:** |
| 2468 Woodway Avenue | | |
| Dayton, Ohio 45406 | : | |
| **Plaintiff,** | : | **Judge:** |
| v. | : | |
| **MIAMI VALLEY HOSPITAL, INC.** | : | **COMPLAINT** |
| 110 North Main Street, Suite 900 | | **(Jury Demand Endorsed Hereon)** |
| Dayton, Ohio 45402 | : | |
| **Defendant.** | : | |

### Parties

1. Plaintiff Bryan A. Mobley ("Mobley") is a citizen and resident of the State of Ohio, Montgomery County.

2. Defendant Miami Valley Hospital, Inc. ("MVH") is an Ohio non-profit corporation with its corporate office in Montgomery County, Ohio. Its primary business is hospital operation.

### Jurisdiction and Venue

3. Venue is proper in this Court because Plaintiff was employed in Montgomery County and the unlawful conduct alleged in this Complaint took place principally within Montgomery County. Defendant is headquartered and operates principally in Montgomery County.

**EXHIBIT A**

## Factual Allegations

4. In 1989, at age 31, Mobley suffered a brain injury leaving him with significant, permanent mental and physical disabilities.

5. On or about October 6, 1997, Mobley was hired by Good Samaritan Hospital where he cleaned surgical suites.

6. Nine years later, on or about October 2006, Mobley was transferred to the surgery center at MVH; Good Samaritan and MVH are affiliated hospitals under the same regional health system. At MVH, Mobley was tasked with cleaning surgical suites.

7. From October 2006 through February 6, 2012, Mobley's regular post at MVH was in the surgical center, cleaning surgical suites.

8. In September 2008, Joseph Zippilli was assigned to be Mobley's supervisor.

9. Prior to February 6, 2012, Mobley never received formal discipline from MVH or Zippilli for any infraction. His performance reviews by Zippilli had always graded him as "meeting" or "exceeding" expectations.

10. Just prior to February 6, 2012, Mobley addressed a workplace concern with Zippilli's supervisor, Danny Smith. Mobley was concerned that several operating suites had been left by others in an unsanitary condition. Mobley was concerned that MVH's cleanliness standards were not being enforced by Zippilli. Smith, Zippilli, and Mobley had a discussion about Mobley's concerns. After that meeting with Zippilli's supervisor, Zippilli began treating Mobley disrespectfully and negatively.

11. On or about February 6, 2012, Zippilli reassigned Mobley to a position called "Patient Trash 2."

12. The "Patient Trash 2" position had completely job duties and tasks than Mobley's position in the surgery center. Rather than cleaning the same surgery suites that he had cleaned for years, Mobley's new job description included:

    a) empty and replace the trash bags on patients' trashcans (and clean the interior and exterior of the trashcan) on MCH's fourth and sixth floors (approximately 90 patient rooms);

    b) empty and replace the trash bags in the intensive care unit (and clean the interior and exterior of the trashcan);

    c) cleaning the intensive care unit waiting area;

    d) cleaning three CT-scan rooms and their control rooms;

    e) cleaning a radiology exam room and office;

    f) cleaning two public restrooms;

    g) cleaning a doctors' lounge (including cleaning carpets, rugs, and mopping a tile floor);

2

    h) cleaning the electroencephalogram facility and restroom; and

    i) cleaning anything else requested of him by Zippilli.

He was expected to complete all of these new tasks in seven hours and fifteen minutes every night.

13. The "Patient Trash 2" position had a reputation of being difficult for even able-bodied individuals to complete, and it had the reputation amongst the housekeeping staff as an assignment given to "problem employees" or a punitive assignment.

14. Due to his physical and mental disabilities, Mobley was never able to complete his new assignment.

15. As soon as Mobley was assigned to the "Patient Trash 2" assignment, he began to be subjected to "progressive discipline" by Zippilli for allegedly not completing the job.

16. Mobley repeatedly informed Zippilli that his new job duties were too much for him to perform and that he could not do the job because of his disabilities. Mobley also approached MVH's human resource department and requested an accommodation. MVH's human resources agreed that a return to his former position cleaning the surgery center would be a reasonable accommodation for Mobley's disabilities.

17. Mobley also brought Zippilli and MVH several doctors' notes supporting his request for an accommodation.

18. Nevertheless, MVH refused to return Mobley to the job he had completed successfully for nearly four years, and it refused to provide him with any other accommodation for his disability.

19. On approximately February 14, 2012, MVH and Zippilli gave Mobley a "Step-3" discipline in MVH's progressive discipline policy. Zippilli never gave Mobley a Step-1 or Step-2 discipline. The Step-3 discipline was for an alleged "no call/no show" on February 14, 2012.

20. Mobley's February 14, 2012 absence had been approved by MVH as a leave day under the Family Medical Leave Act ("FMLA"). Although MVH approved it as an FMLA day, Zippilli and MVH never rescinded the discipline.

21. On March 6, 2012, Mobley filed a complaint with MVH that he was being retaliated against and intimidated due to his disability. On March 8, 2012, he delivered a written request that he be granted a reasonable accommodation for his disability. Mobley was notified later that day of his termination.

22. MVH gave Mobley his Step-4 and Step-5 (termination). Both were allegedly for poor job performance.

23. Each time he was disciplined for alleged poor work performance and after his termination, Mobley filed an internal grievance through MVH's grievance system. He has never received a response to any grievance he filed.

### First Cause of Action:
### Disability Discrimination

24. Mobley realleges paragraphs 1-23 as if fully rewritten herein.

25. MVH is a "covered entity" within the meaning of Section 101(2) of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112(a).

26. Mobley is disabled due to significant mental and physical handicaps. These handicaps substantially limit major life activities. Specifically, and without limitation, it affects Mobley in the major life activities of communication, thinking, remembering, concentrating, ambulating, and interacting with others. Moreover, Mobley suffers from episodic bouts of migraines and seizures that make him substantially limited in life activities.

27. Mobley was also regarded and perceived by MVH and Zippilli as being disabled, substantially limited, and impaired.

28. Mobley's assignment and transfer to "Patient Trash 2" on or about February 6, 2012 was designed and intended by Zippilli and MVH to result in Mobley's termination. Zippilli knew and should have known that Mobley's disabilities prevented him from completing the new tasks assigned to him.

29. When Mobley presented his medical restrictions to MVH and Zippilli, he expected MVH and Zippilli to honor and accommodate the restrictions. He requested two reasonable accommodations: returning to his former position in the surgery center or a relaxing of the job requirements of the "Patient Trash 2" position. Zippilli and MVH refused—in bad faith—to engage in the interactive process to determine what would be an appropriate accommodation for Mobley.

30. Mobley's requested accommodations were reasonable, and his requested accommodations could have been made by MVH without undue hardship.

31. Mobley was a "qualified individual" within the meaning of Section 101(2) of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112(a). He could perform (and did perform) the essential functions of his job.

32. MVH discriminated against Mobley by refusing to provide him the reasonable accommodation he requested or engaging in an interactive process with Mobley.

33. MVH discriminated against Mobley by reassigning him to a position they knew or should have known he would not be able to satisfactorily perform due to his disabilities.

34. MVH discriminated against Mobley by terminating him on the basis of his disability and in retaliation for requesting reasonable accommodation.

35. As a direct and proximate result of MVH's willful and malicious violations of the Americans with Disabilities Act, Mobley has suffered damages and is entitled to relief.

## Second Cause of Action:
## State Law Disability Discrimination

36. Mobley realleges paragraphs 1-35 as if fully rewritten herein.

37. MVH discriminated against Mobley by terminating him on the basis of his disability in violation of Ohio Revised Code Section 4112.02, et seq.

38. As a direct and proximate result of MVH's willful and malicious violations of Ohio Revised Code Section 4112.01, et seq. Mobley has suffered damages and is entitled to relief.

## Third Cause of Action:
## FMLA Retaliation

39. Mobley realleges paragraphs 1-38 as if fully rewritten herein.

40. Mobley was an "eligible employee" as defined by 29 U.S.C. §2611 because MVH employed him for at least 12 months, he worked at least 1,250 hours in the previous twelve-month period, and MVH employed fifty or more employees within a seventy-five mile radius.

41. MVH is an "employer" as defined by 29 U.S.C. 2611.4(A)(ii)(i).

42. Mobley was entitled to FMLA-approved leave for a serious health condition on February 14, 2012 pursuant to 29 U.S.C. §2612(a)(1)(D) and 29 C.F.R. §825.112(a)(4).

43. MVH retaliated against Mobley by bypassing its Step-1 and Step-2 discipline levels under its disciplinary policy and giving him a Step-3 for a "no call/no-show."

44. MVH retaliated against Mobley for exercising his rights under the FMLA by disciplining him for taking approved FMLA leave.

45. MVH's actions constitute willful violations of the FMLA.

46. As a result of MVH's willful violations of the FMLA, Mobley has suffered damages and is entitled to relief.


**WHEREFORE**, Plaintiff Bryan A. Mobley demands judgment against Defendant Miami Valley Hospital, Inc. as follows:

    a) That Plaintiff be awarded compensatory damages including emotional distress damages;

    b) That Plaintiff be awarded all lost pay and benefits;

    c) That Plaintiff be awarded punitive damages;

    d) That Plaintiff be awarded front pay;

e) That Plaintiff be compensated for the adverse tax consequences of receiving a lump sum rather than his compensation over several, separate tax years;

f) That Plaintiff be awarded reasonable attorneys' fees and court costs; and

g) That Plaintiff be awarded all other legal and equitable relief to which he may be entitled.

Dated this 11th day of March, 2013

Respectfully submitted,

/s/ Adam R. Webber
ADAM R. WEBBER, Esq.
Bar No. 0080900
Trial attorney for Bryan A. Mobley
FALKE & DUNPHY, LLC
30 Wyoming Street
Dayton, Ohio 45409
Tel. 937.222.3000
Fax 937.222.1414
Email: webber@ohiolawyers.cc

## JURY DEMAND

Plaintiff Bryan A. Mobley hereby demands a trial by jury.

/s/ Adam R. Webber
Adam R. Webber (0080900)