IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION - DAYTON

| | | |
|---|---|---|
| BRYAN A. MOBLEY, | : | CASE NO. 3:13-cv-00102 |
| Plaintiff, | : | Judge Timothy S. Black |
| v. | : | |
| | : | **DEFENDANT MIAMI VALLEY HOSPITAL'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |
| MIAMI VALLEY HOSPITAL, INC., | | |
| | : | |
| Defendant. | | |
| | : | |

## I.  INTRODUCTION

This case is about an employee, who, unhappy with his housekeeping assignment, refused to properly perform the job, subjecting him to disciplinary action, and prompting him to claim he had a disability that must be accommodated. He then failed to provide information about specific limitations arising from his disability and failed to request an objectively reasonable accommodation.

Mobley's primary job assignment was emptying waste baskets in patient rooms. (See Plaintiff's Response to Miami Valley Hospital's Proposed Undisputed Facts, Doc. No. 27 at ¶ 24, PAGEID# 571). The only person who considered Mobley's transfer to the Patient Trash 2

assignment a demotion was Mobley himself.[1] (Zippili Depo. at 156, Doc. No. 26-7, PAGEID# 494). His contention that a co-worker warned him that the transfer was precursor to firing is inadmissible hearsay. It is also controverted by the facts.

Mobley admits that the set time-frame in which to empty patient waste baskets was set by MVH based upon the national standard of two minutes per room. (Doc. No. 27 at ¶¶31-33, PAGEID# 572). Assuming that Mobley's contention that he had to empty waste baskets in approximately 90 rooms is true[2], the national standards would allot him 180 minutes (3 hours) to complete the assigned tasks. Mobley worked an 8-hour shift. Thus, he had an additional five hours each shift to complete the assigned tasks, but was still unable to do so. This is hardly the pace of a "race horse." Mobley admits that he was only ever able to attend to 25% of the patient rooms. (Doc. No. 27 at ¶ 39, PAGEID# 573). That would mean he was only able to empty waste baskets in 22 patient rooms, at most. Based on national standards, this should take the average person only 44 minutes to complete. Mobley admits that no other MVH employee had a problem emptying patient waste baskets in the time allotted. (Doc. No. 27 at ¶ 39, PAGEID# 573). Despite his emotional claim that MVH took his job away from him, Mobley was given every opportunity to properly perform the functions of his job and chose not to do so.

## II. LAW AND ARGUMENT

### A. Mobley's Supervisors Did Not Regard Him as Disabled

Mobley claims that his supervisors regarded him as disabled. This is not true. He argues that his transfer to the Patient Trash 2 assignment was motivated in part, by Mobley's "medical

---

[1] Considering that cleaning surgery suites involved much more than emptying a waste basket – it included cleaning rooms from "top to bottom," including wiping down walls, cleaning floors, cleaning equipment, taking sterile precautions, etc. (see Mobley Depo. at 14-15, Doc. No. 26-4, PAGEID# 453), it is difficult to comprehend how one would consider cleaning surgery suites "easier" than emptying waste baskets.

[2] This is not true for every shift, as he only had to empty waste baskets in rooms where patients were present, based upon patient census, which fluctuated from day to day and rarely reached the asserted 88 rooms.

2

condition." (Plaintiff's Memorandum in Opposition to Miami Valley Hospital's Motion for Summary Judgment, "Memo in Opp.", Doc. No. 26 at p. 14, PAGEID# 420). Just because Zippilli knew that Mobley had suffered a seizure while alone in the OR does not mean that he regarded Mobley as "disabled." Similarly, Zippilli's acknowledgment that Mobley had a speech impediment does not mean he regarded it to be a disability. A "medical condition" itself does not necessarily equate to a "disability." "Simply having a medical diagnosis is not sufficient to establish a 'disability' for purposes of the ADA." Steele v. Oasis Turf & Tree, Inc., Case No. 1:10-cv-769-HJW, 2012 U.S. Dist. LEXIS 103722, 2012 WL 3028514 (S.D. Ohio July 25, 2012) (citing Laws v. HealthSouth N. Ky. Rehab. Hosp., 828 F.Supp.2d 889 (E.D. Ky. 2011)). *See also*, Ellison v. Software Spectrum, Inc., 85 F.3d 187 (5th Cir. 1996) (holding that breast cancer, a "medical condition," does not meet the definition of a "disability" under the ADA). Mobley has failed to refute the evidence submitted by MVH that Mobley's supervisors did not regard him as "disabled."

Contrary to Mobley's assertion, there is no direct evidence that Mobley's supervisors regarded him as having an ADA-qualifying disability and took adverse action against him as a result. "Direct evidence is evidence that, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 914 (6th Cir. 2013) (quoting Thompson v. City of Lansing, 410 Fed. App'x 922, 929 (6th Cir. 2011). In Hedrick v. W. Reserve Care Sys., the Sixth Circuit held that evidence of an employer who "expressed concern" about the possibility that an employee's medical condition may prevent her from being able to perform her job is insufficient to support the denial of summary judgment. 355 F.3d 444, 453 (6th Cir. 2004). The court reasoned that the plaintiff "tendered no series of comments or reports which would indicate [the

3

employer's] discriminatory animus, and thus, [the interviewer's comment] may properly be characterized as isolated and insufficient to create a genuine issue of material fact regarding [the employer's] discriminatory intent." Id. at 454. The same is true here.

Mobley cites to a recent Sixth Circuit case, Wright v. Memphis Light, Gas & Water Div., Case No. 13-5809, 2014 U.S. App. LEXIS 4348 (6th Cir. March 6, 2014), to support his position that his speech impediment and stutter are considered a disability. In that case, summary judgment was properly awarded to an employer because the plaintiff's performance deficiencies were not related to his speech impediment. Id. at *16. In Wright, one of the plaintiff's supervisors allegedly stated that the one thing that was going to hold the plaintiff back was his speech. Id. at *10. The court did not consider this direct evidence of disability discrimination. Id. Rather, the comment was simply an expression of concern about the plaintiff's ability to perform the job's requirements. Id. at *11-12.

Zippilli's expression of concern about wanting Mobley to be around more people in the event he suffered another seizure was simply that: an expression of concern and an attempt to address that concern. It is not direct evidence of disability discrimination. Similarly, a concern that people in the OR were making fun of Mobley's speech and an attempt to remove him from an environment where he might be subject to ridicule is not direct evidence of disability discrimination. If anything, it is the actions of someone who wanted to eliminate any impediments to Mobley's ability to succeed at work.

Although Mobley has submitted an audio clip to demonstrate he suffers from a speech impediment, a review of Mobley's entire audio testimony indicates that his speech impediment does not prohibit him from speaking clearly at times, answering questions, and being understood. If Mobley's contention that "Mobley's supervisors believed that his social difficulties and

4

communication impairments limited his ability to perform the Surgery position," were considered true (see Doc. No. 26 at p. 16, PAGEID# 422), then it would follow that the transfer to the Patient Trash 2 assignment was a reasonable accommodation of those impairments, rather than evidence of discrimination based upon Mobley's disability. Nevertheless, Mobley's transfer to the Patient Trash 2 position was actually motivated by a desire to see Mobley succeed and to eliminate the conflicts he was experiencing in the OR. (Doc. No. 27 at ¶¶ 21-23, PAGEID# 570).

### B. Mobley Did Not Request a Reasonable Accommodation

Mobley has not refuted his own testimony that he did not need any accommodations for his disability, nor did he request any. (*See* Motion for Summary Judgment, Doc. No. 19 at pp.14-15, PAGEID# 77-78). Moreover, the requests for accommodation that Mobley now says he made were not proper requests.

The purported requests to either (1) adjust his job in the Patient Trash 2 position, or (2) return him to the surgery position were not requests for accommodation that were linked to Mobley's disability. Under the ADA, "discrimination" includes, among other things, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual who is an applicant or employee . . ." 42 U.S.C. § 12112(b)(5)(A). Thus, the statute itself indicates that the reasonable accommodation must be directly connected to the plaintiff's disability. "The employee's request (1) must be sufficiently direct and specific, and (2) must explain how the accommodation requested is linked to some disability." Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d 91, 102 (1st Cir. 2007) (internal citations omitted). *See also*, Estades-Negroni v. Associates Corp. of N. Am., 377 F.3d 58, 64 (1st Cir. 2004) (requiring request to be "express" and "linked to a disability"). For an accommodation to be reasonable, it

5

must be necessary in light of the plaintiff's known limitations. Johnson v. Cleveland City School Dist., 344 Fed Appx. 104, 111 (6th Cir. 2009) (citing Nance v. Goodyear Tire & Rubber Co., 527 F.3d 557 (6th Cir. 2008).

Summary judgment for the employer is appropriate when the plaintiff does not provide a causal connection between his disability and the requested accommodations. *See, e.g.*, Felix v. N.Y. City Transit Auth., 154 F.Supp. 2d 640, 660 & 661 (S.D. N.Y. 2001) (finding that because there was no causal connection between the plaintiff's ADA-qualifying limitation and the reasonable accommodations sought, the plaintiff could not invoke the protections of the ADA); Kelley v. Amazon.com, Inc., Case No. 12-CV-5132-TOR, 2013 U.S. Dist. LEXIS 166534 (E.D. Wa. Nov. 21, 2013) (summary judgment to defendant granted when plaintiff failed to establish a connection between her alleged disability limitations and her deficient job performance); Obnamia v. Shinseki, Case No. 2:12-cv-58, 2013 U.S. Dist. LEXIS 137621, (S.D. Ohio Sept. 25, 2013) (plaintiff's request for a private office to accommodate her hearing loss and tinnitus was not necessary to ensure that she was able to perform the essential functions of her job).

Furthermore, the ADA does not impose an obligation on employers to accommodate personal preferences. *See* Gile v. United Airlines, Inc., 95 F.3d 492, 499 (7th Cir. 1996). Additionally, Congress never intended for the ADA to interfere with personnel decisions, especially when the plaintiff's request for accommodation essentially asked the court to establish the conditions of his employment. Gaul v. Lucent Technologies, Inc., 134 F.3d 576, 581 (3rd Cir. 1998). The sole intent of the ADA is to provide equal, not preferential, opportunities to disabled persons. Terrell v. USAir, 132 F.3d 621, 627 (11th Cir. 1998).

Mobley has never mentioned the connection between his speech impediment and seizure disorder and his ability to empty the requisite waste baskets in the Patient Trash 2 position. More

6

importantly, Mobley has offered no evidence as to how his disabilities would be reasonably accommodated by his purported accommodation requests. In other words, how is his speech impediment accommodated by returning him to the position cleaning surgery suites? And, as Mobley alleges that some of the personality conflicts arose with members of the surgery staff because they were making fun of his speech impediment, why would he want to return to such an environment? Moving him out of the surgery department was a decision his supervisors made in order to give Mobley a chance to succeed at work. Similarly, how is Mobley's seizure disorder accommodated by returning him to the surgery department? Mobley has provided no answer to these questions.

The doctor's note from Dr. Martin dated February 16, 2012, does not specifically indicate how Mobley's "diagnosis of migraine cephalgia, hypertension, and seizure disorder" limited his ability to perform the functions of the job. (Doc. No. 26-1, PAGEID#445). It also contains incorrect information from Mobley about Mobley's job assignment. (Id). The note therefore makes no connection between Mobley's disability limitations and the purported request that Mobley be returned to prior job responsibilities. Similarly, in Mobley's hand-written letter dated February 22, 2012, Mobley claims that he is a "special needs person" with a "lifetime medical condition," but he does not specify what his "special needs" are or what his "lifetime medical condition" is, nor does he indicate how his disability results in limitations or what reasonable accommodations can be made for such (non-existent) limitations. (Pl. Ex. 4, Doc. No. 26-11, PAGEID# 520). He only states that he "can't physically perform this job description in the time that has been set for me." (Id.) If this statement is, in fact, true, then Mobley has admitted that he cannot perform the essential functions of his job. He had an entire 8 hour shift to complete what national standards indicate should be completed in 3 hours. Additionally, as discussed

7

below, if this statement could be construed as a request to further lessen Mobley's workload, such a reduction of production standards is not a reasonable accommodation under the ADA.

Mobley's February 22, 2012 letter is similar to the e-mail sent by the plaintiff in Woodle v. Baptist Life Cmtys., which stated generally that "I am being discriminated against due to my coverage under the American's with Disabilities Act; I have submitted my reasonable accommodations that I have requested/asked for going forward." Case No. 1:120cv0879, 2014 U.S. Dist. LEXIS 26037, *19 (S.D. Ohio Feb. 28, 2014). The court in that case granted summary judgment to the employer because the plaintiff did not "indicate the type of accommodation that would be necessary to permit him to perform the essential functions of his job." Id. at *22.

The March 8, 2012 Letter sent by Mobley's counsel to MVH also does not meet the requirements of a request for a reasonable accommodation. While Mobley claims that he was terminated just a few hours after MVH received a letter from Mobley's attorney, this is not an accurate representation of the facts. The decision to terminate Mobley had been approved by MVH the day before, on March 7, 2012. (*See* Pl. Ex. 60, Doc. No. 19-52, PAGEID# 372; Pl. Ex. 61, 62). The letter from Attorney Webber was not submitted until after MVH had made the decision to terminate Mobley. (*See* Pl. Ex. 78, Doc. No. 26-26, PAGEID# 561). Due to scheduling issues, Mobley was not informed of the decision to terminate him until March 8, 2012. Thus, the letter was not submitted within a timeframe to be considered a request for accommodation. Moreover, for the reasons previously discussed, the requested accommodations were not objectively reasonable.

The grievance that Mobley claims he submitted was not submitted in accordance with MVH's grievance procedure. (Mobley Depo. at pp. 173-174, Doc. No. 26-4, PAGEID# 464).

8

Mobley fails to refute the law establishing that light duty is not a reasonable accommodation. To the extent that Mobley was requesting a lighter workload (i.e., that he not have to empty patient waste baskets in the number of rooms provided for in the job description), this is also not a reasonable accommodation. As a general proposition, an accommodation which requires an employer to lower a uniform performance standard for a particular employee is not reasonable. The EEOC provides the following guidance on the issue:

> There are several modifications or adjustments that are not considered forms of reasonable accommodation. An employer does not have to eliminate an essential function, i.e., a fundamental duty of the position. This is because a person with a disability who is unable to perform the essential functions, with or without reasonable accommodation, is not a 'qualified' individual with a disability within the meaning of the ADA. Nor is an employer required to lower production standards – whether qualitative or quantitative – that are applied uniformly to employees with and without disabilities.

*Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act*, EEOC Notice No. 915.002, October 17, 2002, available at http://www.eeoc.gov/policy/docs/acommodation.html. As set forth in MVH's Motion for Summary Judgment, this guidance appears to be followed by various courts that have had the occasion to apply it. (*See* Doc. No. 19 at pp. 15-16, PAGEID# 78-79).

Mobley's argument that light duty should have been available to Mobley because it is available in limited workers compensation cases also fails. The Sixth Circuit has explained that "temporary light duty positions for recuperating employees need not be converted into permanent positions." Hoskins v. Oakland County Sheriff's Department, 227 F.3d 719, 730 (6th Cir. 2000). "To do otherwise would actually frustrate the purposes of the ADA." Wardia v. Justice & Pub. Safety Cabinet Dept. of Juvenile Justice, 509 Fed. Appx. 527, 2013 U.S. App. LEXIS 238 at *11 (6th Cir. 2013). Contrary to the unsupported assertion by Mobley, MVH did

9

communicate to him that light duty was not an available accommodation. (See Pl. Ex. 46, Doc. No. 19-44, PAGEID# 363).

Moving Mobley back to the assignment in the OR was also not a reasonable accommodation. Although Mobley claims that the exhibits showing complaints by members of the OR staff are hearsay, Mobley admits that he had been experiencing problems with members of the OR. (Doc. No. 27 at ¶¶ 94-95, PAGEID# 583). Moreover, Zippilli testified, based on personal knowledge, that he had fielded numerous complaints about Mobley from the OR staff. (Doc. No. 27 at ¶ 10, PAGEID# 567). Whether or not the crux of the complaints are true, the fact that the complaints were made is not disputed. Mobley's supervisors were required to spend an inordinate amount of administrative time addressing such complaints. Under the circumstances, returning Mobley to the OR assignment was not a reasonable accommodation.

Mobley claims that MVH should have considered moving Mobley to another housekeeping assignment if it was not willing to return him to the surgery assignment. (*See* Doc No. 26 at p. 28, PAGEID# 434). Mobley, however, never made this request. The burden was on Mobley to make a reasonable accommodation request directly linked to the limitations of his disability. *See* Freadman, 484 F.3d at 102-103. "The employer has 'no duty to divine the need for a special accommodation' where the employee fails to make an adequate request." Id. at 104 (citing Reed v. LePage Bakeries, Inc., 244 F.3d 254, 261 (1st Cir. 2001)). Because he never made such a request, MVH cannot have discriminated against him for failing to consider it.

C. **MVH Did Not Discriminate Against Mobley by Allegedly Failing to Engage in the Interactive Process**

Mobley argues that MVH was required to engage in the interactive process. Under the facts of this case, he is incorrect. To trigger the employer's duty to engage in the "interactive

10

process," the employee must inform the employer of both the disability *and* the resulting limitations. As the Fifth Circuit has explained:

> For purposes of proving ADA discrimination, it is important to distinguish between an employer's knowledge of an employee's disability versus an employer's knowledge of any limitations experienced by the employee as a result of the disability. The distinction is important because the ADA requires employers to reasonably accommodate limitations, not disabilities. "The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather the effect of that impairment on the life of the individual." 29 C.F.R. 1630.2(1), App. (1995); 42 U.S.C. § 12112(a)((5)(A).
>
> \*\*\*
>
> [W]hile a given disability may limit one employee (and therefore necessitate a reasonable accommodation), it may not limit another. For this reason, the ADA does not require an employer to assume that an employee with a disability suffers from a limitation. In fact, better public policy dictates the opposite presumption: that disabled employees are not limited in their abilities to adequately perform their jobs. . . . Accordingly, it is incumbent upon the ADA plaintiff to assert not only a disability, but also any limitation resulting therefrom.

Taylor v. Principal Fin. Grp., Inc., 93 F.3d 155, 164 (5th Cir. 1996); *see also*, Gantt v. Wilson Sporting Goods Co., 143 F.3d 1042, 1046-47 (6th Cir. 1998) ("The employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation"). "An employer violates the requirement to engage in the interactive process *only if* . . . the employee can demonstrate that the employee could have been reasonably accommodated but for the employer's lack of good faith." Denczak v. Ford Motor Co., 215 Fed. Appx. 442, 446 (6th Cir. 2007).

In addition, many of the federal appellate circuit courts that have considered the issue "have concluded that failure to engage in the interactive process does not form the basis of an ADA claim in the absence of evidence that accommodation was possible." McBride v. BIC

11

Consumer Products Mfg. Co., Inc., 583 F.3d 92, 100-01 (2nd Cir. 2009) (citations omitted). "An employer's failure to engage in the interactive process does not relieve a plaintiff of [his] burden of demonstrating, following discovery, that some accommodation of [his] disability was possible." Id. at 101. Mobley has failed to put forth any evidence that his requested accommodations were reasonable or that any other accommodations were possible. Accordingly, he cannot prevail on a claim that MVH failed to accommodate his disability by failing to engage in the interactive process.

Whether it was required to, MVH did engage in discussions with Mobley about his purported claim of being unable to perform the job as a result of his disability. Mobley's supervisors determined his inability to empty patient waste baskets in the time allotted was due to a lack of effort, rather than a limitation imposed by Mobley's disability. (Zippilli Depo. at 119, Doc. No. 26-7, PAGEID# 489; Benton Depo. at 57; Pl. Ex. 39, Doc. No. 19-38, PAGEID# 354). Nevertheless, MVH gave Mobley more time to make progress in his job tasks and assigned him a trainer. (See Doc. No. 27 at ¶¶ 51, 57-58, 61, PAGEID# 576-578). Zippilli also informed Mobley that if, in fact, his disability prohibited him from performing the job requirements, then perhaps Mobley should contact CIGNA to inquire about short-term disability. (Zippilli Depo. at 203-204, Doc. No. 26-7, PAGEID# 501). Thus, MVH did engage in a good-faith exploration of the issues facing Mobley.

**D.**     **MVH's Proffered Reason for Terminating Mobley Was Not Pretextual**

Mobley has not met his burden of showing pretext. "A plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." Chen v. Dow Chem. Co., 580 F.3d 394, 400 (6th Cir. 2009).

12

In other words: "did the employer fire the employee for the stated reasons or not?" Id. at n. 4. The ADA bars discrimination "because of" an employee's age or disability, meaning that it prohibits discrimination that is a "but-for" cause of the employer's adverse decision. Lewis v. Humboldt Acquisition Corp., 681 F.3d 312, 321 (6th Cir. 2012). To show pretext, a plaintiff must "produce sufficient evidence from which a jury could reasonably reject [the defendant's] explanation of why it [took the adverse employment action.]" Chen, 580 F.3d at 400. Mobley has not produced any such evidence.

"The key inquiry is whether the employer made a reasonably informed and considered decision before taking adverse employment action." Martinez, 703 F.3d at 915 (quoting Smith v. Chrysler Corp., 155 F.3d 799, 806-07 (6th Cir. 1998). To survive summary judgment, an employee is required "to provide evidence from which the finder of fact could conclude that [the employer's] proffered reason is false, but also evidence from which the fact finder could conclude that [the employer's] action was intentionally discriminatory." Smith v. Allstate Ins. Co., 195 Fed. Appx. 389, 395 (6th Cir. 2006) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 519, 113 S. Ct. 2742 (1993)). A plaintiff's subjective belief that the employer's proffered reason is false is not sufficient to withstand summary judgment. Mitchell v. Toledo Hosp., 964 F.2d 577, 585 (6th Cir. 1992) ("[C]onclusory allegations and subjective beliefs . . . are wholly insufficient evidence to establish a claim of discrimination as a matter of law.") Moreover, "as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." Sybrandt v. Home Depot, U.S.A., Inc., 560 F.3d 553, 558 (6th Cir. 2009). To challenge an employer's business judgment, plaintiff must produce evidence that could support a finding that the employer's decision was unreasonable, or, "so

13

ridden with error that defendant could not honestly have relied upon it." Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 576 (6th Cir. 2003).

Mobley has failed to produce sufficient evidence from which a jury could reasonably reject MVH's explanation as to why it terminated Mobley. Mobley admits that (1) he was expected to perform the duties of emptying waste baskets from patient rooms (Doc. No. 27 at ¶¶ 5, 25-26, PAGEID# 566, 571); (2) he did not complete the job description as required (Doc. No. 27 at ¶¶ 30, 40, PAGEID# 572, 574); (3) he was placed on a developmental plan in an effort to improve his performance (Doc. No. 27 at ¶¶ 51, 57-58, PAGEID# 576-577); and (4) he did not make any progress in his performance. (Doc. No. 27 at ¶ 59, PAGEID# 578). He has not provided any evidence that this information is false and should reasonably be rejected. He has failed to demonstrate that the proffered reasons did not actually motivate, or were insufficient to motivate, the decision to terminate Mobley.

Mobley's supervisors did not consider Mobley's transfer to the Patient Trash 2 position to be adverse; rather his supervisors were attempting to give him an opportunity to succeed in the face of personality conflicts he encountered in the surgery position. (Doc. No. 27 at ¶¶ 21-23, PAGEID# 570). The decision to terminate Mobley was based strictly on his refusal to complete his job duties each day in the Patient Trash 2 position. (*See* Pl. Ex. 60, Doc. No. 19-57, PAGEID# 372). Mobley was given multiple opportunities to improve his performance, including a developmental plan. It was Mobley's choice not to make any improvements. His speech impediment, seizure disorder, neurological impairment, and other maladies were not a part of the equation. The evidence shows that MVH made a reasonably informed and considered decision, and thus Mobley failed to show that the reasons proffered were a pretext for unlawful discrimination. The record reflects that Mobley's poor job performance was sufficient to warrant

14

his termination and that his poor performance was completely unrelated to his speech impediment, seizure disorder and/or neurological impairments. Mobley has presented no evidence that MVH intended to discriminate against him based on his speech impediment, seizure disorder, and/or neurological impairments or any purported need for accommodations. He cannot show that "but for" his disability, he would not have been terminated. *See, e.g.,* Lewis, 681 F.3d at 321. Accordingly, MVH is entitled to judgment as a matter of law.

### III. CONCLUSION

The undisputed facts of this case demonstrate that MVH did not discriminate against Mobley based upon his purported disability.

For all of the foregoing reasons, and for all of the reasons set forth in the Defendant's Motion for Summary Judgment, the Defendant, Miami Valley Hospital respectfully requests that this court grant summary judgment its favor.

Respectfully submitted,

/s/ Gretchen M. Treherne
John F. Haviland (0029599), Trial Attorney
Gretchen M. Treherne (0074376)
BIESER, GREER & LANDIS LLP
400 PNC Center
6 North Main Street
Dayton, Ohio 45402-1908
Telephone: (937) 223-3277
Facsimile: (937) 223-6339
E-mail: jfh@bgllaw.com; gmt@bgllaw.com
*Attorneys for Defendant, Miami Valley Hospital*

## CERTIFICATE OF SERVICE

I certify that this document was filed on April 30, 2014, using the Court's CM/ECF system, which will serve the following registered users:

Adam R. Webber, Esq.
FALKE & DUNPHY, LLC
30 Wyoming Street
Dayton, Ohio 45409
Telephone: 937-222-3000
Facsimile: 937-222-1414
E-mail: webber@ohiolawyers.cc
*Attorneys for Plaintiff*

                        BIESER, GREER & LANDIS LLP

                        By */s/ Gretchen M. Treherne*
                           Gretchen M. Treherne (0074376)

213075/433155