**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| **BRYAN A. MOBLEY,** | : | **CASE NO:  3:13-cv-00102** |
| **Plaintiff,** | : | **District Judge Timothy J. Black** |
| | | **Magistrate Judge Michael R. Merz** |
| vs. | : | |
| **MIAMI VALLEY HOSPITAL, INC.,** | : | |
| **Defendant.** | : | |

_____

**PLAINTIFF BRYAN A. MOBLEY'S MOTION IN LIMINE**
_____

Plaintiff Bryan A. Mobley hereby moves this Court for an Order in Limine prohibiting Defendant from presenting the following evidence at trial:

- Evidence relating to alleged reports of inter-personal "conflicts" between MVH employees and Mr. Mobley prior to Plaintiff's transfer;

- Evidence that the Ohio Civil Rights Commission and Equal Employment Opportunity Commission issued a "no probable cause" finding;

- Evidence of an occupational "time study" or a "national average" for the Trash position;

- Testimony of legal conclusions by Mr. Mobley.

The specific bases for this Motion are more fully set forth in the Memorandum below.

**MEMORANDUM**

This case is set for a jury trial commencing on December 7, 2015. The principal issues to be determined by the jury are whether Defendant Miami Valley Hospital ("MVH") discriminated against Plaintiff Bryan A. Mobley by failing to grant him a reasonable accommodation for his disability and whether MVH discriminated against Mobley by failing to engage in the interactive process with him. These claims stem from Mobley's transfer from a janitorial position where he principally cleaned and sanitized surgical operating rooms (hereinafter, the "Surgery" position) to one where he principally emptied trash cans in 90 patient rooms (hereinafter, the "Trash" position).

### I. Legal Standard.

"A motion in limine is 'any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered.'" *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (quoting *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984)). "The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Prod. Design Servs. v. Sutherland-Schultz, Ltd.*, 2015 U.S. Dist. LEXIS 54934, *7, 2015 WL 1879975 (S.D. Ohio Apr. 23, 2015)(Rice, J.)(quotations and citations omitted).

### II. Evidence of Reports of Alleged Interpersonal Conflicts Between MVH Employees and Mobley Prior to his Transfer are Hearsay and Not Relevant.

In this litigation, Defendant Miami Valley Hospital ("MVH") produced evidence that it claims document a series of interpersonal conflicts between Mr. Mobley and other employees of MVH in 2011. These alleged complaints pre-date Mr. Mobley's transfer to the Trash position on February 6, 2012.

It is anticipated that MVH may attempt to introduce evidence of these alleged conflicts in order to paint Mobley as an aggressive, demanding, rude, or erratic person. These precise claims were made in MVH's motion for summary judgment. (Doc. 19, PageID 66-67). The alleged documentation of these complaints were attached to MVH's motion for summary judgment as Mobley Depo. Exhibits F, G, H, I, and J,[1] and two of Mobley's supervisors testified that they received these complaints about Mobley from MVH employees and "coached" Mobley about them. *Id*. Mobley's supervisor also claimed that other MVH employees asked for Mobley to be transferred. *Id*.

These alleged complaints by MVH employees are inadmissible for three reasons. First, Exhibits F, G, I, and J are hearsay from MVH employees. They have not been authenticated or sworn to by any of the alleged witnesses who made the reports, and their purported authors have not been identified as witnesses by MVH. (See Doc. 12).[2] These are out-of-court written and oral statements of alleged witnesses to interpersonal interactions. They should be excluded under Fed. R. Evid. 801 and 802.

Second, MVH's reports of these alleged conflicts are, by its own admissions, not relevant and should be excluded by Evid. R. 401 and 404. These alleged reports and complaints are facts that are of no consequence in determining this action. Mobley was never formally disciplined for any of these interactions and indeed, Mobley's supervisors testified that these supposed

---

[1] These documents were previously filed as:
  Exhibit F - Doc. 19-10, PageID 305;
  Exhibit G – Doc. 19-11, PageID 306;
  Exhibit H – Doc. 19-12, PageID 307;
  Exhibit I – Doc. 19-13, PageID 308, and
  Exhibit J – Doc. 19-14; PageID 309

[2] Exhibit I's author has never been disclosed by Defendant. Exhibit J is an email chain. The first email contains hearsay upon hearsay – it is an excerpt of an email by one Nicole Kayler repeating statements purportedly made to her by her staff. Ms. Kayler has not authenticated this document, nor has MVH listed as witnesses the staff members who purportedly communicated the information to her. (See Doc 12).

negative interactions had nothing to do with their decision to terminate him:

> Q: And whatever personality issues or personality conflicts or -- disagreements with staff on the surgical floor that Mr. Mobley may have had, none of those played a part in his eventual termination, correct?
> A: Correct.

(Benton Depo, p. 16; Doc. 26-5, PageID# 470)

> Q: Okay.  All these incidents in 2011, you said that they didn't result in any discipline for Bryan.  It's correct to say then that none of these had played any part in his termination, correct?
> A: Correct.

(Zippilli Depo., p. 78; Doc. 26-7; PageID# 487).

Moreover, at their best, these alleged inter-personal conflicts are character evidence prohibited by Evid. R. 404(a)(1).  MVH's only possible purpose in presenting this evidence is to "tar brush" Mobley as a combative, demanding, rude, or defiant person.  MVH's hope is that this evidence might mislead a jury into believing that these traits explain Mobley's supposed "lack of effort" in completing the Trash assignment, e.g. that he was not trying hard and was being defiant because of the transfer.   This is the very definition of inadmissible character evidence; MVH is attempting to show that "on a particular occasion the person acted in accordance with the character or trait."  Evid. R. 404(a)(1).

Third, even if these alleged inter-personal conflicts are relevant, they are more prejudicial than probative.  Other MVH employees' alleged negative feelings or dislike toward Mobley have no bearing on the material issues in this case: whether Mobley was denied a reasonable accommodation and whether MVH failed to engage in the interactive process with him.  These alleged interpersonal spats between Mobley and MVH employees prior to his transfer from Surgery to Trash would only serve to prejudice and confuse jurors.

In sum, MVH's exhibits on this subject have no bearing on this case and are hearsay of persons not listed as witnesses in this case. Even if some of MVH's listed witnesses attempted to testify about these irrelevant, interpersonal spats, they would only be repeating hearsay statements *reported* to them by others. Moreover, the presentation of this evidence would unnecessarily create several side-show, mini-trials whereby Mobley would be forced to then present *his* side of the story on each of these non-sequiturs. This would ultimately lengthen the trial as the litigants engaged in needless "he said, she said" debates that MVH's own witnesses admit had nothing to do with their decision to terminate Mobley.

For these reasons, Plaintiff requests that the Court Order that Defendant MVH is prohibited from offering trial testimony or exhibits discussing alleged reports of interpersonal conflicts between Mobley and his co-workers prior to his transfer from Surgery to Trash on February 6, 2012.

### III. Evidence of the Ohio Civil Rights Commission's and Equal Employment Opportunity Commission's Administrative Decisions Are Not Relevant and Are Hearsay.

It is anticipated that Defendant MVH might try to introduce evidence that the OCRC issued a "no-probable cause" determination in this case. MVH mentioned this in its Motion for Summary Judgment. (Doc. 19; PageID# 69). The EEOC also administratively adopted this finding. A copy of the EEOCs and OCRC's notices are attached to this motion.

First, a notice composed by the Ohio Civil Rights Commission in this case would be inadmissible hearsay, as neither party has named a witness who could properly authenticate such a document. (See Docs. 11 and 12). Nor is any witness identified by either party who could explain the basis for the determination. This defect is particularly acute in this case, because MVH's principal response to the OCRC investigation was an argumentative and conclusory

5

letter from its legal counsel making representations of fact and law. The documents and their contents should be excluded under Fed. R. Evid. 802.

Second, these agencys' determinations are not relevant and are unfairly prejudicial. As this court ruled just last year, a determination by an administrative agency is presumptively inadmissible. *Galloway v. Chesapeake Union Exempted Vill. Schs. Bd. of Educ*., 2014 U.S. Dist. LEXIS 151678, *27, 95 Fed. R. Evid. Serv. (Callaghan) 1064 (S.D. Ohio Oct. 27, 2014)(Black, J.)(citing *Williams v. Nashville Network*, 132 F.3d 1123, 1129 (6th Cir. 1997))("The Sixth Circuit has found that an EEOC letter of violation is presumptively inadmissible because it suggests preliminarily that there is reason to believe a violation has taken place and results in unfair prejudice to a defendant.); *Williams v. Nashville Network*, 132 F.3d 1123, 1129, (6th Cir. 1997)(finding that a probable cause determination is even less meaningful than a EEOC letter of violation); *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 269 n.5 (6th Cir. 2010)(citing *Coleman v. Quaker Oats Co*., 232 F.3d 1271, 1284 (9th Cir. 2000)("The EEOC's finding of reasonable cause is not probative here because it provides no facts but only a bare conclusion.").

The Federal Rules of Evidence state that "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Given the substantial likelihood of prejudice proscribed by Rule 403, the Sixth Circuit has suggested that agency probable cause determinations might be per se inadmissible: "Examining the nature of an EEOC cause determination leads to the conclusion that the district courts should be free to adopt a general rule that refuses to admit these cause determinations in

any sort of trial, whether to the court or to a jury." *EEOC v. Ford Motor Co.,* 1996 U.S. App. LEXIS 26263, *25-26 (6th Cir. Sept. 30, 1996); *see also Ricker* v. *Food Lion, Inc.,* 3 Fed. Appx. 227, 231 (6th Cir. Jan. 23, 2001)(quoting *Ford Motor Co.*). The Sixth Circuit further stated that an agency's probable cause determination "carries an evidentiary value of practically zero" and admission of the allegations or evidence within the agency's decision is redundant and would circumvent the Federal Rules of Evidence. *Ford Motor Co.,* 1996 U.S. App. LEXIS 26263 at *26-27.

Introduction of the OCRC's or EEOC's notices, including any references to them in other exhibits or testimony, would result in misleading the jury and unfair prejudice to Mobley. There is a substantial risk that a jury will attach undue weight to these agency decisions. *Williams v. Nashville Network,* 132 F.3d 1123, 1128-1129 (6th Cir. 1997) ("A strong argument can be made that a jury would attach undue weight to this type of agency determination . . . rather than as a mere finding of probable cause.") The only conceivable purpose MVH could argue for admission of these findings or determinations is to compel the jury to reach the same conclusions as the OCRC and EEOC. MVH should not be permitted to usurp the factfinder's role and substitute the OCRC's and EEOC's decisions (based on a far less developed record) for that of the jury. *Thoman v. OhioHealth Corp.,* 2005 U.S. Dist. LEXIS 29857, *25-26 (S.D. Ohio Nov. 29,2005)(excluding probable cause letter under Evid.R. 403 because unfair prejudice would result, especially when the agencies only considered a small part of the evidence).

For these reasons, Plaintiff requests that the Court Order that Defendant MVH is prohibited from offering trial testimony or exhibits discussing or referencing determinations by the OCRC or the EEOC.

**IV.  Evidence of "Time Studies" for the Trash Position is Hearsay and Not Probative.**

It is anticipated that MVH may wish to offer testimony that there exists or existed a "time study" of the "average" time it should have taken Mobley to service a patient's room at MVH. Such a study has never been produced as a document in this case, and only vague references to it have been made by MVH witnesses. In fact, MVH's witnesses contradict each other on what the "time study" was based on. In effect, MVH wishes to pass off as fact an alleged conclusion of a scientific study. The alleged outcome of this study is inadmissible for several reasons.

In their depositions, MVH witnesses testified as follows:

> Q:  And -- to your knowledge, has Miami Valley done any studies as to how long this is supposed to take?
> A:  When [an outside contractor] took over [janitorial services at MVH] initially, they did a time study on all of the jobs throughout the hospital and timed them all out.
> Q:  And do you know what the amount of time is budgeted for each patient room?
> A:  I *believe* it's two minutes. Average.

(Zippilli Depo, p. 149; Doc. 19-6, PageID# 199)(emphasis added).

> Q:  What was your basis for your belief that this was a level of effort issue?
> A:  I would say that -- that we were seeing no progress from Bryan. And that we -- due to the fact that all of our jobs are timed out based on national averages . . .

(Benton Depo., p. 59; Doc. 19-3, PageID# 125).

Notably, both supervisors' testimony indicates that this study or calculation was performed by someone other than themselves.

First, MVH's witnesses' recollections of the outcome of this study are hearsay. The conclusions or findings of that study are out-of-court statements offered to prove the truth of the matter asserted, e.g. that there is an unassailable "average" time that it should take to perform a series of tasks. The conclusions of this supposed study or national average are simply the imperfect recollections of individuals who have no first-hand knowledge of the underlying statistical or evidentiary measurements that were used to compute this "average." Nor is there

8

any opportunity to compare the tasks performed in the supposed time study as compared to those in Mobley's job. The reported conclusions of this study are hearsay and unverifiable.

Second, this "average" time is not relevant to the particular facts of this case. There has never been any evidence tying this "average" to the conditions in Mr. Mobley's job duties on the Trash position. Mobley's supervisor testified that there are a host of factors that could cause someone to take longer performing the trash duties: sometimes there are multiple trashcans; sometimes the patient asks you to get a nurse; sometimes the trashcan has to be scrubbed clean; sometimes there are two patients in a room; sometimes there is a spill that has to be mopped up; etc. (Zippilli Depo. p. 148-51; attached hereto). There is no evidence that these factors were or were not present when Mobley was on his Trash rotation. The implication that there is an unassailable "average" time would compel the jury to conclude that the conditions of the time study were identical to those of the study.

Finally, evidence of a time study generally requires the opinion of an expert witness. See *Meals v. City of Memphis*, Case No. 03-2077 (W.D. Tenn. Apr. 2005)(granting motion in limine under *Daubert* as to the results of a time-motion study); *Gomez v. Tyson Foods, Inc.*, Case No. 8:08CV21 (Dist. Of Neb. Mar. 15, 2013)(ordering that proponent of an occupational time study must produce the study's expert/author at trial); *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, Case No. 08-C-488 (E.D. Wisc. Sept. 27, 2010)(discussing admissibility of expert witness's testimony regarding occupational time study); *Hosler v. Smithfield Packing Co.*, 2010 U.S. Dist. LEXIS 102077, *11 (E.D. N.C. Aug. 25, 2010)(discussing admissibility of occupational time study expert under *Daubert*). No such expert witnesses is being offered by MVH. In the absence of any expert witness, the Court and the jury are ultimately unable to make an "assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of

whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 592-93.

For these reasons, Plaintiff requests that the Court Order that Defendant MVH is prohibited from offering trial testimony or exhibits discussing or referencing the alleged conclusions of a "time study" or any "national average" related to Mobley's assigned duties in the Trash position.

### V. Mr. Mobley's Testimony Regarding Legal Conclusions is Not Admissible and Not Probative.

Plaintiff anticipates that MVH may attempt—as it did in deposition—to ask Mr. Mobley for his legal conclusion on particular legal terms of art. For example, in his deposition, Mr. Mobley was asked whether he is "disabled" or whether he asked for a "reasonable accommodation." These, as this Court knows, are ADA legal terms of art whose definitions have been wrestled with in thousands of legal opinions, and they are terms that will be defined by the Court in its jury instructions. When asked about these terms, Mr. Mobley sometimes gave less than cogent answers—which is unsurprising given that he is a cognitively-impaired, lay person.

In its summary judgment briefs and appellate brief, MVH exulted in these supposed "admissions" by Mr. Mobley. See, e.g, Doc. 19, PageID# 72, 77-78. This Court gave them no credence in its Summary Judgment Order (Doc. 29), and the Sixth Circuit specifically discussed the inadmissibility of Mr. Mobley's legal conclusions:

> MVH does not argue that summary judgment is appropriate on Mobley's status as a disabled person, except to claim that he admitted in a deposition that he was not disabled. Looking at the wider context of Mobley' reply, this does not seem so clear. For one thing, Mobley—a man whose cognitive limitations are the heart of this case—may not have been using the word "disabled" in the technical legal sense of his examiner, especially since he had, moments before, referred to himself as a "special needs person" who had endured "a stroke and two brain surgeries[.]" *See Spaulding v. Conopco, Inc.*, 740 F.3d 1187, 1196 (8th Cir. 2014) ("**We consider only *admissible evidence* and disregard portions of various affidavits**

10

> **and depositions that . . . purport[] to state legal conclusions as fact.**" (alterations in original) (citation and internal quotation marks omitted)); *cf. Salgado v. Atl. Richfield Co.*, 823 F.2d 1322, 1327 (9th Cir. 1987) (instructing district court to ignore party's "own characterization of the 'legal' cause of his discharge[]" upon remand).  And during a more cogent moment Mobley asserted that he *is* disabled and importantly, though, the record contains other evidence, including an affidavit from Dr. Martin, that Mobley has "substantial cognitive and neurological impairments" that substantially limit "his ability to speak, think, and communicate."

*Mobley v. Miami Valley Hospital*, 603 Fed. Appx. 405, 410 n.3 (6th Cir. 2015)(emphasis added); and see *Garland v. Smigielski*, 2015 U.S. Dist. LEXIS 123530, *4 n.1 (W.D. Mich. Aug. 26, 2015) (citing *Mobley*)("Verified arguments and legal conclusions are not evidence.").

Moreover, the Sixth Circuit has explained why eliciting witness testimony on legal conclusions is so dangerous:  "Even if a jury were not misled into adopting outright a legal conclusion . . . the testimony would remain objectionable by communicating a legal standard—explicit or implicit—to the jury. [A witness] . . . is not qualified to compete with the judge in the function of instructing the jury." *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. Mich. 1994)(quoting *Hygh v. Jacobs*, 961 F.2d 359 (2d Cir. 1992)).  And while the *Berry* Court was specifically discussing legal conclusions made by expert witnesses, the danger of juror confusion is *more* acute with lay witnesses (especially those with cognitive impairments).  See also, *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985)("The problem with testimony containing a legal conclusion is in conveying the witness' unexpressed, and perhaps erroneous, legal standards to the jury.").

To be clear: this motion is aimed at prohibiting questions that call for point-blank testimony on key legal terms like "disability" or "reasonable accommodation"—terms that "have a separate, distinct and specialized meaning in the law different from that present in the vernacu-

11

lar." *Torres v. County of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985).  If this motion is granted, MVH would still be free to ask all the questions it wishes regarding these subjects.

In *Torres v. County of Oakland*, the Sixth Circuit noted that it "disfavors lay opinion testimony when it consists of a legal conclusion" when considering the propriety of asking the plaintiff whether she "had been discriminated against because of her national origin." *Torres v. County of Oakland,* 758 F.2d 147 (6th Cir. 1985).  The Sixth Circuit held that this question called for an improper legal conclusion. But, the court noted, "a more carefully phrased question could have elicited similar information and avoided the problem of testimony containing a legal conclusion. The defendants could have asked [the witness] whether she believed Torres' national origin 'motivated' the hiring decision. This type of question would directly address the factual issue of [] intent without implicating any legal terminology." *Torres,* 758 F.2d at 151.

At trial, MVH may, upon cross-examination, attempt to procure from Mobley testimony on legal conclusions.  If he gives answers that diverge from his less-than-cogent responses in his deposition, MVH may attempt to impeach him with his deposition responses.  The only possible purpose if this is to mislead and confuse the jury as to the legal standards and jury instructions that will be given with this case.   As the Advisory Committee Notes to Fed. R. Evid. 704 explain:

> Under Rule 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach . . . They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. Thus the question, "Did T have capacity to make a will?" would be excluded, while the question "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and formulate a rational scheme of distribution?" would be allowed.

Evid.R. 704 Advisory Committee Notes (1984).

Examples of such improper questions in this case would be those that call for Mobley's opinion on the definition of terms such as: "Disabled/Disability," "Reasonable Accommodation", "Accommodation", "Interactive Process", "Good Faith", and "Qualified". Each of these terms have a separate, distinct, and specialized meaning in the law. *Torres*, supra. Therefore, Plaintiff requests that this Court Order that questions by MVH to Mobley (or the use of deposition testimony for impeachment purposes) that call for his testimony or opinion on terms that have a separate, distinct, and specialized meaning in the law are inadmissible under Fed. R. Evid. 701, 702, and 403.

        Respectfully submitted,

        /s/ Adam R. Webber

        _____
        ADAM R. WEBBER, Esq.
        Bar No. 0080900
        Trial attorney for Bryan A. Mobley
        FALKE & DUNPHY, LLC
        30 Wyoming Street
        Dayton, Ohio 45409
        Tel.   937.222.3000
        Fax   937.222.1414
        Email:  webber@ohiolawyers.cc

**CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2015, this document was served electronically through the Court's CM/ECF system to:

John F. Haviland
BIESER, GREER & LANDIS LLP
400 PNC Center, 6 North Main Street
Dayton, Ohio 45402-1908

        /s/ Adam R. Webber

        _____
        Adam R. Webber (#0080900)
        Attorney for Plaintiff