## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| **BRYAN A. MOBLEY,** | : | **CASE NO:  3:13-cv-00102** |
| **Plaintiff,** | : | **District Judge Timothy J. Black** |
| | | **Magistrate Judge Michael R. Merz** |
| **vs.** | : | |
| **MIAMI VALLEY HOSPITAL, INC.,** | : | |
| **Defendant.** | : | |

## PLAINTIFF'S REPLY IN SUPPORT TO
## PLAINTIFF'S MOTION IN LIMINE (DOC. 39)

Plaintiff Bryan A. Mobley hereby replies to Defendant Miami Valley Hospital's ("MVH") Opposition to Plaintiff's Motion in Limine.

### I.  Evidence of Reports of Alleged Interpersonal Conflicts Between MVH Employees and Mobley Prior to his Transfer are Hearsay and Not Relevant.

Plaintiff has requested that this Court bar Defendant from offering trial testimony or exhibits discussing alleged reports of interpersonal conflicts between Mobley and his co-workers prior to his transfer from Surgery to Trash.  They are inadmissible because they are hearsay and their (non-existent) probative value is outweighed by their (significant) prejudicial value.

Defendant first argues that they are not hearsay because they are not being offered to prove the truth of the matter asserted.  (Doc. 40; PageID# 699).  But Defendant's proffered reason shows that they *are* being offered for the truth of the matters asserted in the documents. The documents contain alleged reports by non-witnesses who were coworkers of Mobley's.  The documents describe him as having personality conflicts with his coworkers.  These unsworn, out-of-court statements are inherently unreliable.  Mobley's alleged behavior in these reports is the

1

"matter they assert."  MVH states that it wishes to offer these reports to show the reason why Mobley was transferred from Surgery to Trash and why he was not transferred back when he requested it—that is to show that he had conflicts with coworkers.  These alleged reports are being offered precisely to prove the matter they assert: Mobley was a cause of "unrest within [MVH's] ranks."  (Doc. 40; PageID# 699).  Defendant also ignores that at least one of the documents, Exhibit J, contains hearsay of hearsay—a report from one non-witness of what another non-witness told her about Mobley.

Defendant next argues that the information is relevant because "they demonstrate MVH's rationale for reassigning Mr. Mobley . . . [and] the rationale why MVH was unwilling to return Mr. Mobley to his previous position."  But this is in direct contradiction to Mobley's supervisors' own testimony on this subject.  His supervisors state *other* reasons for why he was transferred and why he was not returned to his prior position.  See, e.g. MVH's Proposed Undisputed Facts (Doc20), ¶22-23, 82-83.

Finally, any probative value of these alleged complaints would be outweighed by the substantial prejudicial effect and the time they would waste.  These hearsay statements would cause an otherwise straight-forward trial to devolve into a "he said, she said" debate about the substance of these alleged conflicts.  These statements are reports of petty workplace issues which have no bearing on the claims or defenses of either party, e.g. Mobley demanding fresh food be given to him in the cafeteria.  If admitted, Mobley would have to defend himself in court against these *non sequitur*, unsworn, out-of-court, inflammatory statements made by persons who the jury will have no opportunity to evaluate.  Indeed, one of the reports, Exhibit I, is by an anonymous employee.

These alleged reports of alleged personality conflicts Mobley had with his coworkers should be excluded because they are hearsay, not relevant, and unfairly prejudicial.  This motion should be granted.

## II.     Evidence of the Ohio Civil Rights Commission's and Equal Employment Opportunity Commission's Administrative Decisions Are Not Relevant and Are Hearsay.

EEOC and OCRC determinations are so inadmissible that the Northern District of Ohio has adopted a *per se* rule against their admissibility.  *See EEOC v. Ford Motor Co*., 1996 U.S. App. LEXIS 26263, *24-26 (6th Cir. Sept. 30, 1996)("an EEOC cause determination carries an evidentiary value of practically zero.").  Not only did the Sixth Circuit affirm the Northern District's blanket prohibition, but the Sixth Circuit invited other district courts to do the same. *Id*.  Going even further, the Sixth Circuit has indicated that a *per se* rule *for* admissibility of these documents would be an abuse of discretion. *Ricker v. Food Lion, Inc*., 3 Fed. Appx. 227, 231 (6th Cir. 2001)(citing *Ford Motor*). And after *Ford Motor*, the Sixth Circuit has repeatedly supported district court's refusals to admit EEOC and OCRC findings. See, e.g., *Ricker* at 231 ("the district court here did not abuse its discretion in declining to admit the EEOC cause determination."); *Williams v. Nashville Network*, 132 F.3d 1123, 1129 (6th Cir. 1997)(finding "no abuse of discretion in the district court's decision to exclude [an] EEOC letter" from evidence where there was "little if any basis for the district court to conclude that the report had any probative value"); *Dorn v. GMC*, 131 Fed. Appx. 462, 471 (6th Cir.. 2005)(affirming district court's rejection of EEOC's "right to sue" letter); *but see Blakely v. City of Clarksville*, 244 Fed. Appx. 681, 683 (6th Cir. 2007)(finding no error in admitting EEOC determination where the trial court "specifically instructed the jury that it was free to disregard any conclusions contained in the report because the EEOC may not have had the same evidence as the jury had.").

3

Defendant cites *Thaman v. OhioHealth Corp*., for the (correct) proposition that the Southern District of Ohio has not yet accepted the Sixth Circuit's invitation to adopt a "*per se* rule of [] inadmissibility with respect to*" EEOC and OCRC administrative decisions.  *Thaman v. OhioHealth Corp*., 2005 U.S. Dist. LEXIS 29857, *24 (S.D. Ohio Nov. 29, 2005).   Yet, Defendant neglects to note that the *Thaman* Court, when presented with this very issue, nevertheless sustained the plaintiff's motion in limine for the reasons expressed in this Plaintiff's motion: (a) "the letters are of little probative value"; "[t]he EEOC merely adopted, in conclusory fashion, the findings of the OCRC"; " the OCRC's conclusions appear to be based almost exclusively on the investigation conducted by Defendant"; and "[t]he risk of unfair prejudice in this case is that the jury will simply adopt the conclusions of the OCRC and EEOC . . . who had considered only a very small and factional part of the relevant evidence." *Id*.  at *25-26 (internal citations and quotations omitted).

And Defendant has no rebuttal to this Court's holding last year that EEOC and OCRC determinations are "presumptively inadmissible."  *Galloway v. Chesapeake Union Exempted Vill. Schs. Bd. of Educ*., 2014 U.S. Dist. LEXIS 151678, *27, 95 Fed. R. Evid. Serv. (Callaghan) 1064 (S.D. Ohio Oct. 27, 2014)(Black, J.)(citing *Williams v. Nashville Network*, 132 F.3d 1123, 1129 (6th Cir. 1997))("The Sixth Circuit has found that an EEOC letter of violation is presumptively inadmissible because it suggests preliminarily that there is reason to believe a violation has taken place and results in unfair prejudice to a defendant.)

Instead, Defendant's brief merely makes the conclusory statement that "The documents are relevant to demonstrate that two administrative agencies found there to be no probable cause that MVH committed discriminatory acts against Mr. Mobley."  (Doc. 40, PageID# 701).  But relevant evidence must go toward proving a fact of consequence in determining the action."  Fed.

4

R. Evid. 401(b).  The findings of administrative agencies, however, are of no consequence in determining this action.  They do not make any claim or defense of either party more or less true. Indeed, Defendant's brief essentially concedes this: "it is the jury's function to consider all of the facts presented at trial and make their own determination whether Mr. Mobley's claims are meritorious."  (Doc. 40; PageID# 702).

Finally, Defendant's assertion that the OCRC's and EEOC's determinations are not hearsay is unpersuasive.  Indeed, the very case Defendant cites, *Alexander v. CareSource*, affirmed the inadmissibility of agency findings on hearsay grounds.  In *Alexander*, the Sixth Circuit affirmed this Court's finding that the agency determinations were not admissible because they were untrustworthy.  *Alexander v. CareSource*, 576 F.3d 551, 563 (6th Cir. 2009)(affirming *Alexander v. CareSource*, Case No. 3:07-cv-00198, Doc. 26; PageID# 210 (S.D. Ohio June 3, 2008)(Merz, M.J.)).  This Court had found that the agency determination was of little probative value because its "conclusions were not tied to specific facts, and it was unclear what evidence the investigator considered in reaching her conclusion." *Alexander*, 576 F.3d at 563.  The Sixth Circuit agreed.  "In this case, there was no agency 'hearing,' the investigation lingered for over a year before the report was completed, and there is no information in the record as to the evidence available to the agency." *Alexander*, 576 F.3d at 563.  For these reasons, the Sixth Circuit affirmed that, though an agency finding is an "official report" under Fed. R. Evid. 803(8), it is nevertheless inadmissible hearsay because its trustworthiness cannot be established.  *Id.* ; see also *Ford Motor*, at *32 (quotations omitted)("It is undisputed that the EEOC report is merely a cumulation of hearsay and contains the opinion of the investigator based upon his credibility choices with respect to the hearsay.").

Defendant has given this Court no reason to deviate from this Court's and the Sixth Circuit's general prohibition of EEOC and OCRC determinations. These determinations have an "evidentiary value of practically zero," are hearsay, and pose an enormous risk of confusing and prejudicing the jury. Plaintiff's motion in limine should be granted.

### III. Evidence of "Time Studies" for the Trash Position is Hearsay and Not Probative.

Plaintiff has asked this Court to Order that Defendant MVH is prohibited from offering trial testimony or exhibits discussing or referencing the alleged conclusions of a 'time study' or any 'national average' related to Mobley's assigned duties in the Trash position. (Doc. 39; PageID# 686). The reasonableness of Defendant's supervisor's expectations of Mobley is at issue in this case.

Perhaps misreading the breadth of Plaintiff's motion, Defendant first opposes this on the grounds that Mobley's supervisors "have personal knowledge of the amount of time that it takes to complete the jobs in their department . . ." (Doc. 40; PageID#702). This may certainly true, and Plaintiff does not dispute that such testimony would be admissible. For example, Mobley's supervisor(s) can certainly give their subjective opinion, based on their *personal* knowledge and observations and experience, that it takes 'X' minutes to remove trash from a patient room. Such testimony, if made, would be a fitting and proper area of inquiry. And, as the Defendant notes, a jury composed of lay persons is certainly qualified to listen to such testimony and determine the reasonableness of the time set for "completing repetitive tasks." (Doc. 40; PageID# 703).

What would be inadmissible and improper, however, is for that supervisor to then testify that his *personal* knowledge is based on, influenced by, or supported by an alleged scientific/mathematical "time study" or "national average" for completing that job. It is this reference to some undisclosed, amorphous, scientific-sounding study that is improper and should

be barred.  A witness's testimony that there is an unassailable "national average" time is an attempt to take the matter out of the lay witness's and jury's experience.

Importantly, Defendant's brief impliedly concedes that this "time study" or "national average" falls outside of Mobley's supervisors' own personal knowledge—claiming that it is "akin" to their testifying about "professional literature" in their "profession." (Doc. 40; PageID# 703).  But this demonstrates precisely why its hearsay: "professional literature" (a.k.a. learned treatises) are for expert witnesses to testify about, not lay witnesses.  Fed. R. Evid. 803(18).

MVH's use of the folksy beekeeper analogy from *Berry v. City of Detroit* is particularly helpful.  As the analogy goes: an aeronautical engineer could properly testify—based on his scientific knowledge—about how a bee is able to fly, or a beekeeper could properly testify—based on his lay observations and experience—on how a bee is able to fly.  *Berry v. City of Detroit*, 25 F.3d 1342, 1349-1350 (6th Cir. 1994).  What would be absurd, however, is to allow the beekeeper to testify that he knows a bee can fly because he once read a book on aeronautical engineering!  This is precisely what Defendant proposes here: MVH wishes to have its lay witnesses testify that they once heard the alleged conclusion of one or more mathematical or scientific studies that they were not personally familiar with.

Mobley's supervisors may certainly testify about their personal observations with "the general time it should take to complete certain tasks within the hospital's Environmental Services Department because of their employment experience at the hospital."  These witnesses should not be permitted, however, to cross into citing formal mathematical or scientific "studies" or "averages" that (a) have never been disclosed in this case, (b) they are not personally knowledgeable about, and (c) are not qualified to testify about.  Plaintiff's motion in limine should be granted.

**IV.     Mobley's Testimony Regarding Legal Conclusions is Not Admissible and Not Probative.**

Plaintiff's final topic in his motion in limine is a request for an Order barring questions by MVH to Mobley (or the use of deposition testimony for impeachment purposes) that call for his testimony or opinion on terms that have a distinct, and specialized meaning in the law.

In response, MVH argues that it "is seeking to elicit Mr. Mobley's opinion and factual testimony as to whether he is disabled, what his disability is, and whether he requested a reasonable accommodation from MVH."   (Doc. 40; PageID# 707).   To be sure, these are appropriate and necessary areas of inquiry for both sides.   What MVH's brief fails to note, however, is the instructional lesson articulated in the Advisory Notes to Fed. R. Evid. 704 and the Sixth Circuit's decisions in *Torres v. County of Oakland,* 758 F.2d 147 (6th Cir. 1985) and *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir.1994).

The lesson from the Rules Advisory Committee and the Sixth Circuit is simply that improper questions are those that call for an improper legal conclusion such as:

- Are you disabled?
- What is your disability?
- Did you request a reasonable accommodation?

They are improper because they intrude on the Court's duty to instruct the jury on what the law is, they do not assist the trier of fact, and they waste time. Evid.R. 704 Advisory Committee Notes (1984); *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994). Instead of asking improper questions, MVH could explore these same topics by asking:

- Do you have a physical or mental impairment?  Are you limited in one or more major life activities?
- What is your physical or mental impairment?
- Did you request a modification or adjustment to the work environment?

Such "carefully phrased question[s]" "elicit[] similar information and avoid[] the problem of testimony containing a legal conclusion." *Torres,* 758 F.2d at 151.

So why does MVH resist "carefully phrasing" its questions?   The answer is clear: MVH likes some of the answers Mobley gave MVH's improper questions in his deposition.  If MVH's attorney asks the same question at trial and get a different answer, they will want to use Mobley's deposition answer to impeach him.  But as the Sixth Circuit has already held *in this case*,[1] these responses call for a legal conclusion—by a lay witness (and a cognitively disabled one at that)—and are not admissible evidence or proper testimony.  *Mobley v. Miami Valley Hospital*, 603 Fed. Appx. 405, 410 n.3 (6th Cir. 2015)(emphasis added); and see *Garland v. Smigielski*, 2015 U.S. Dist. LEXIS 123530, *4 n.1 (W.D. Mich. Aug. 26, 2015) (citing *Mobley*)("legal conclusions are not evidence.").

At the upcoming trial, there is only one person whose job it is to instruct the jury on what the law is and what the definitions of key legal terms are.  That person is not Mr. Mobley, and that person is not Miami Valley's attorney.  Questions that call for legal conclusions should be barred, as should answers to such questions.  This motion should be granted.

Respectfully submitted,

/s/ Adam R. Webber

_____
ADAM R. WEBBER, Esq.
Bar No. 0080900
Trial attorney for Bryan A. Mobley
FALKE & DUNPHY, LLC
30 Wyoming Street
Dayton, Ohio 45409
Tel.  937.222.3000
Fax  937.222.1414
Email:  webber@ohiolawyers.cc

---

[1] In its summary judgment decision, this Court also properly gave no weight to this testimony regarding Mobley's legal conclusions.  (Doc. 29)

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 28, 2015, this document was served electronically through the Court's CM/ECF system to:

John F. Haviland
BIESER, GREER & LANDIS LLP
400 PNC Center, 6 North Main Street
Dayton, Ohio 45402-1908

/s/ Adam R. Webber

_____
Adam R. Webber (#0080900)
Attorney for Plaintiff